CHRIST CHURCH *vs.* ANGELINA LAVEZZOLO & others.

Suffolk.    January 26, 1892. — February 26, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Indenture — Easement.*

D., the owner of two estates, on the first of which was a brick house and on the second, in the rear of the first, a wooden one, entered into an indenture in 1841 with the wardens and vestry of a church, covenanting that he would cause a large door opening from his brick house on the northeast side thereof upon the land of the church to be closed up forever thereafter, it being agreed that a window might be put in the place of the door, and further covenanting that he would cause the lower part of four windows opening on the northeast side of his wooden house upon the back part of the land of the church to the height of two thirds thereof to be permanently blinded by stationary blinds, so as to intercept the view therefrom upon and over the land of the church.   D. further released all his right of passage, if any, or right to swing doors or blinds in and upon the land of the church, and all other rights which he had in or upon the land, excepting, however, the privilege of swinging blinds to the windows then existing.   The court found, at the hearing on a bill in equity for an injunction, that the walls of the brick house were the same which existed at the date of the indenture, except that they had been built several feet higher; that the estate on which the brick house stood had been conveyed to the defendants, but that the other estate had not, and that the wall of the brick house on the side adjoining the land of the plaintiff stood about seven and one half inches within the limits of the land of the defendants.   *Held*, in the absence of covenants that other windows should not be opened in the wall of the brick house, that none could be implied from the covenants concerning the windows in the wooden house, and that the release of D. in the indenture did not touch the right to open windows in the wall of the brick house which stood within the limits of the defendants' land, as this right was not a right in the plaintiff's land, and could not by long continuance become a right or easement in such land.

BILL IN EQUITY, praying that the defendants be restrained from further constructing or maintaining certain windows or any

new windows in their building, and that the building be restored
to its original condition so far as the windows were concerned.

The bill alleged that the plaintiff was possessed of a certain
parcel of land, with the buildings thereon, situated in Boston
and known as Christ Church ; that the defendants were owners
of an adjoining parcel of land, with the buildings thereon ; that
said defendants' land was originally bought of the church cor-
poration, and was conveyed subject to certain restrictions to one
Jonathan Merry in 1803, and thereafter by subsequent owners
to one William Dillaway in 1830 ; that differences arose be-
tween Dillaway and the wardens and vestry as to what was the
true boundary line between the two estates, and also whether
certain easements claimed by Dillaway existed, which differ-
ences were adjusted by a certain agreement entered into be-
tween Dillaway, his heirs and assigns, with the Wardens and
Vestry and their successors and assigns, dated April 9, 1841,
and thereafter recorded in Suffolk Registry of Deeds, which
agreement, after defining and fixing the boundary line between
the two estates, recited, " And the said Dillaway *doth hereby
covenant* and agree with the said Wardens and Vestry, their suc-
cessors and assigns, that he will cause a large door now open-
ing from his brick house on the northeast side thereof upon the
land of the said Wardens and Vestry to be closed up forever
hereafter, it being, however, understood and agreed by the said
parties that a window may be put in the place of said door, and
doth further covenant and agree as aforesaid that he will cause
the lower part of four windows, now opening on the northeast
side of his wooden house, upon the back part of the land of the
said Wardens and Vestry, to the height of two thirds thereof, to
be permanently blinded by stationary blinds, so as to intercept
the view therefrom upon and over the said land ; and the said
Dillaway hereby releases to the said Wardens and Vestry, their
successors and assigns, all his right of passage, if any, or right
to swing doors or blinds in and upon the land of the said War-
dens and Vestry aforesaid, and all other rights which he may
have in or upon the said land, excepting, however, the privi-
lege of swinging blinds to those windows now existing "; that
the defendants, " without right and in violation of the terms
and spirit of said agreement, and against the protest of the

Wardens and Vestry of said church, have permanently constructed and built on to said building, which existed at the time of said agreement, two large windows which look directly into the windows of said church, and which are objectionable to the Wardens and Vestry of said church, and an annoyance to the proprietors of and the worshippers in said church."

The defendants denied most of the allegations in the plaintiff's bill. Hearing in the Superior Court, before *Dewey*, J., who entered a decree, the third paragraph of which was as follows: " The defendants have not violated any rights of the plaintiff in opening and using the windows in their brick house standing upon their own land, to which objection is made in plaintiff's bill of complaint."

The plaintiff appealed, and the presiding judge reported the case for the determination of this court, making in the report the following statements:

" It was in evidence that defendants had put in two new windows in their brick house standing about seven and one half inches within the limits of their own land; and that the defendants, before putting in said windows, knew that plaintiff had objected to defendants putting windows in the ell of their house on the side next the church.

" The plaintiff stated in its evidence, and the court found, that the windows are a substantial annoyance in the use of its church building for public worship, by exposing the interior of the church, and religious services there conducted, to view from said windows; but it did not appear that the defendants had made any improper use of said windows, or had any purpose to annoy plaintiff thereby.

" The evidence showed also that the agreement to put permanent blinds on the windows of the wooden house of said Dillaway, mentioned in the indenture made in April, 1841, between the said Christ Church and said Dillaway, referred to a wooden house which stood upon land in the rear, and adjoining, but not parcel of, the estate now owned by the defendants. The brick walls of the house in which said windows were placed, as above described, are the same which existed when said indenture was entered into, except that they have been built several feet higher."

*T. E. Grover*, for the plaintiff.

*C. E. Beale*, for the defendants.

FIELD, C. J.    The plaintiff complains of the third paragraph of the decree entered by the Superior Court.    The contention is, that by the indenture of April 9, 1841, between the Wardens and Vestry of Christ Church and William Dillaway, Dillaway and his grantees were prevented from opening windows in the brick house on the side adjoining the land of the plaintiff.    It has been found by the court that the wall of the house on this side stands about seven and one half inches within the limits of the land of the defendants; and that the wooden house mentioned in the indenture " referred to a wooden house which stood upon land in the rear, and adjoining, but not parcel of, the estate now owned by the defendants."    It seems that Dillaway, when he executed the indenture, owned two estates, on the first of which was a brick house, and on the second, which was in the rear of the first, was a wooden house; that the walls of the brick house are the same which existed at the date of the indenture, except that they have been built several feet higher; and that the estate on which the brick house stands has been conveyed to the defendants, but that the other estate has not. By the indenture Dillaway covenanted that he would cause a door opening from his brick house upon the land of the plaintiff to be closed up, it being agreed that a window might be put in place of the door.    There are no covenants that other windows shall not be opened in the wall of the brick house, and none can be implied from the covenants concerning the windows in the wooden house.    The release by Dillaway of " all his right of passage, if any, or right to swing doors or blinds in and upon the land of " the plaintiff, " and all other rights which he may have in or upon the said land, excepting, however, the privilege of swinging blinds to those windows now existing," etc., does not touch the right to open windows in the wall of his brick house which stood " about seven and one half inches within the limits " of his own land.    This right to open windows is not a right in the land of the plaintiff, and cannot by long continuance, under our laws, become a right or easement in its land.

*Decree affirmed.*